ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **ROLAND RENATO MANARIN**<br><br>Apelado<br><br>v.<br><br>**JORGE L. MONTES MELENDEZ POR SI Y COMO COADMINISTRADOR DE LA SOCIEDAD LEGAL DE BIENES GANANCIALES CONSTITUIDA CON ELVIRA E. MONTES GARCIA Y OTROS**<br><br>Apelante | KLAN202301159 | **APELACIÓN**<br>Procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.:<br>**SJ2023CV00215 (603)**<br><br>Sobre:<br>**COBRO DE DINERO ORDINARIO** |

Panel integrado por su presidenta la juez Domínguez Irizarry, la juez Grana Martínez y el juez Pérez Ocasio

Pérez Ocasio, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de mayo de 2024.

Comparece ante nos, Jorge Montes Meléndez y Elvira Montes García y la Sociedad de Gananciales compuesta por ambos, en adelante la parte apelante o matrimonio Montes-Montes. La parte apelante nos solicita que revoquemos una "*Sentencia*" notificada el 2 de noviembre de 2023 por el Tribunal de Primera Instancia, Sala de San Juan, en adelante Foro Primario o TPI-San Juan. En dicha sentencia el Tribunal declaró "Con Lugar" la "*Demanda*" sobre Cobro de Dinero.

Examinado el recurso presentado, así como el derecho aplicable y la transcripción de la vista, *confirmamos la Sentencia en Rebeldía* del 2 de noviembre de 2023.

**I.**

La situación de hechos que nos ocupan son los siguientes.

Renato Manarin contrató a Montes Meléndez en su gestión profesional como corredor de bienes raíces para que administrara el arrendamiento a corto plazo de una propiedad inmueble.[1] Ante el incumplimiento laboral de Montes Meléndez, este incurrió en deudas por concepto de rentas y emitió un Pagaré a Renato Manarin o a su orden, por la suma de $46,538.04 de principal.[2] Así también, acordaron que devengaba interés del 10% hasta su total pago o durante cualquier período de incumplimiento, mora o falta de pago y aún después de su presentación o vencimiento.[3]

Suscrito el instrumento ante el Notario Milton Portalatín Pérez, los apelantes también prometieron que en caso de incumplimiento pagarían una suma líquida adicional de $4,653.80.[4] Las partes habían acordado la fecha y lugar de pago.[5] Así las cosas, el apelado alega que Montes Mélendez no realizó pago alguno, por lo que la deuda se volvió líquida, vencida y exigible.[6]

Tras varios incidentes procesales entre las partes, el 12 de enero de 2023, Renato Manarin presentó una demanda por Cobro de Dinero bajo el proceso ordinario contra el matrimonio Montes Montes.[7] Ante la dificultad de emplazar a Montes Meléndez, Renato Manarin solicitó realizar el emplazamiento por edicto.[8] El 31 de enero de 2023, a solicitud de Renato Manarin, el Foro Primario emitió una *"Orden"* de Aseguramiento de Sentencia.[9] Posteriormente, el edicto fue publicado el 21 de marzo de 2023.[10] El

---

[1] Apéndice del Recurso de Apelación pág. 26.
[2] *Id* en la pág. 4.
[3] *Id.*
[4] *Id.*
[5] *Id.* en la pág. 6.
[6] *Id.* en la págs. 1-3
[7] *Id.*
[8] *Id.* en la pág. 26
[9] *Id.* en la pág. 18-19.
[10] *Id.* en la pág. 26.

plazo restante para presentar una alegación responsiva por el matrimonio Montes Montes expiraba el 20 de abril de 2023.[11] Ese día, Montes Meléndez presentó una moción solicitando término adicional para completar acuerdo entre las partes.[12] No obstante, el matrimonio Montes Montes no presentó alegación responsiva, por lo que Renato Manarin solicitó que se anotara la rebeldía de conformidad con las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 45.1.[13]

Según surge del expediente de autos, el matrimonio Montes Montes presentó contestación a la demanda el 18 de mayo de 2023.[14] No obstante, mediante orden, el TPI- San Juan solo aceptó la contestación de la demanda en cuanto a Montes Meléndez.[15] Respecto a Montes García la declaró en rebeldía, toda vez que ésta fue emplazada personalmente el 27 de enero de 2023, y sin haber presentado alegación responsiva dentro del término dispuesto en las Reglas de Procedimiento Civil, supra.[16]

Trabada la controversia entre las partes, Renato Manarin comenzó el proceso de descubrimiento de prueba.[17] El matrimonio Montes Montes presentó una moción solicitando paralización de los procedimientos y prórroga para el descubrimiento de prueba, incluyendo oportunidad para contratar representación legal, toda vez que se encontraba en estado de indefensión por ser una persona lega en materia de derecho.[18] Ante la solicitud, el Foro a *quo* denegó la paralización y la prórroga solicitada por el matrimonio Montes Montes.[19] Así mismo, denegó la solicitud de levantar la rebeldía por

---

[11] Apéndice del Recurso de Apelación, págs. 26-28.
[12] *Id.*
[13] *Id.* en las págs. 24-25.
[14] *Id.* en las págs. 29-31.
[15] *Id.* en las pág. 32.
[16] *Id.*
[17] *Id.* en las págs. 32-44.
[18] *Id.* págs. 37-40.
[19] *Id.* pág. 41.

no haber establecido justa causa para ello y le apercibió a comparecer con representación legal.[20]

Posteriormente, el Foro Primario impuso sanciones, se dio por admitido el descubrimiento de prueba, eliminó las alegaciones y se anotó rebeldía a Montes Meléndez conforme las Reglas de Procedimiento Civil, supra.[21]

Así las cosas, el 26 de octubre de 2023, se celebró la Vista en su Fondo en rebeldía.[22] Según surge de la *Transcripción* de la Vista, tras la anotación de rebeldía, el tribunal instruyó a las partes sobre los derechos de una parte demandada en rebeldía.[23] Estos incluyen, como parte de su debido proceso de ley, contrainterrogar e impugnar la cuantía, siendo esta la razón por la cual los apelantes continuaron alegando unas cantidades que -a su parecer- debían deducirse de la deuda. Entre esas cantidades se incluía la cantidad de $28,600.00 que el propio apelado reconoció.[24] Sobre esa cuantía, producto de la venta de un inmueble gestionada por el apelante, la evidencia en autos demuestra que la misma fue debidamente reducida.[25]

Eventualmente, el Foro Primario dictó *"Sentencia"* el 1 de noviembre de 2023, declarando "Ha Lugar" la demanda.[26] El 14 de noviembre de 2023 el matrimonio Montes Montes presentó una *"Moción de Reconsideración"* al amparo de la Regla 47 de Procedimiento Civil, 32 LPRA, Ap. V, R. 47.[27] El 29 de noviembre de 2023 fue notificada una *"Resolución"* del TPI- San Juan denegando la moción de reconsideración.[28]

---

[20] Apéndice del Recurso de Apelación, pág. 41.
[21] *Id.* pág. 111.
[22] Transcripción de Prueba Oral de la Vista en su Fondo en Rebeldía.
[23] *Id.* en las págs. 17-18.
[24] Transcripción de Prueba Oral de la Vista en su Fondo en Rebeldía, págs. 52, 64.
[25] Apéndice del Recurso de Apelación, pág. 169.
[26] *Id.* págs. 204-211.
[27] *Id.* págs. 212-217.
[28] *Id.* págs. 218-223.

Inconforme con el proceder del Foro Primario, la parte apelante acudió ante este Foro el 28 de diciembre de 2023, y en su recurso de *"Apelación",* le imputa al TPI-San Juan los siguientes señalamientos de error:

> **PRIMERO:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CON LUGAR LA DEMANDA DE EPÍGRAFE EXISTIENDO EVIDENCIA CONTUNDENTE DE LA FIGURA DE COMPENSACIÓN EN ESTE CASO Y COMO TAL EL DEMANDADO NADA DEBE.
>
> **SEGUNDO:** ERRÓ EL TRIBUNAL AL LLEVAR A CABO LA VISTA EN SU FONDO, A PESAR DE QUE EL DEMANDADO HABÍA PRESENTADO DENTRO DEL PLAZO CORRESPONDIENTE UN DESCUBRIMIENTO DE PRUEBA QUE NO HABÍA SIDO CONTESTADO Y QUE ERA VITAL PARA SU DEFENSA.

La parte apelada compareció el 11 de enero de 2024 con una *"Moción de Desestimación"*, a la que se opuso la parte apelante el 29 de enero de 2024. Este Foro declaró ambos petitorios "No Ha Lugar", mediante *"Resolución"* el 2 de febrero de 2024. Además, concedió a la parte apelada un término de diez (10) días para presentar su alegato en oposición. En cumplimiento de orden, la parte apelada presentó su *"Alegato en Oposición"* el 12 de febrero de 2024. Por otro lado, mediante moción, la parte apelante solicitó la autorización de este Tribunal para presentar la transcripción de prueba oral, la cual fue declarada "Ha Lugar" el 23 de febrero de 2023. En cumplimiento de orden, la parte apelante sometió ante esta Curia la *"Transcripción de Vista en Rebeldía y Juicio en su Fondo del 26 de octubre de 2023",* el día 18 de marzo de 2024. Con el beneficio de la comparecencia de ambas partes, y la transcripción de la prueba oral, procedemos a resolver.

**II.**

### A. Apelación

Las Reglas de Procedimiento Civil, supra, se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio, entiéndase las alegaciones, mociones, descubrimiento, vista evidenciaria, sentencia, reconsideración, *apelación*, y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la apelación se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel que se presenta ante un foro de mayor jerarquía cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Foro de Primera Instancia. Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA, Ap. VIII, R. 52; *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019). Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari.* Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, se reconoce que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones, cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *Bathia Gautier v. Gobernador,* 199 DPR 59, 182 (2017); *Sierra v. Tribunal Superior,* 81 DPR 554, 572 (1959).

### B. Prueba oral y *quantum* de prueba

Con relación a la prueba oral en las revisiones judiciales, y la norma de corrección que cobija las determinaciones realizadas por el Foro Primario, nuestro Tribunal Supremo ya se ha expresado en *Pueblo v. Pérez Delgado,* 211 DPR 654, 671-674 (2023). Se ha establecido que cuando una parte señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que éste ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Para esto debe utilizar alguno de los mecanismos de recopilación de prueba oral, como lo son:

(1) *transcripción de la prueba,*
(2) exposición estipulada o
(3) exposición narrativa.
*Pueblo v. Pérez Delgado,* supra.

De igual forma, la Regla 19 del Reglamento del Tribunal de Apelaciones, supra, expresamente dispone que "cuando la parte apelante haya señalado algún error relacionado con la suficiencia de

la prueba testifical o con la apreciación errónea de ésta por parte del tribunal apelado, someterá *una transcripción,* una exposición estipulada o una exposición narrativa de la prueba. *Pueblo v. Pérez Delgado,* supra, págs. 655 y 671. *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 129 (2019); Camacho Torres v. AAFET, 168 DPR 66, 91 (2006).

Es sabido, y así lo reconoce nuestro ordenamiento jurídico, que los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. Id. pág. 671. El Máximo Foro Judicial local ha reiterado en múltiples ocasiones que las disposiciones reglamentarias que gobiernan los recursos que se presentan ante el Tribunal de Apelaciones deben observarse rigurosamente. Id. págs. 671-672.

### C. Rebeldía

La rebeldía no es otra cosa que "la posición procesal en que se coloca la parte que ha dejado de ejercitar su derecho a defenderse o de cumplir con su deber procesal". *Mitsubishi Motor v. Lunor y otros,* 2023 TSPR 110, 212 DPR ___ (2023); *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 587 (2011). Tiene como propósito el disuadir a una parte a dilatar los procedimientos como una estrategia de litigación. *Rivera Figueroa v. Joe's European Shop,* supra.

Por otro lado, la Regla 45.1 de Procedimiento Civil, supra, detalla los asuntos concernientes con la anotación de rebeldía, a saber, expresa que:

> Cuando una parte contra la cual se solicite una sentencia que concede un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas, y este hecho se pruebe mediante una declaración jurada o de otro modo, el secretario anotará su rebeldía.

> El tribunal a iniciativa propia o a moción de parte, podrá anotar la rebeldía a cualquier parte conforme a la Regla 34.3 (b) (3).

> Dicha anotación tendrá el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2 (b).

> La omisión de anotar la rebeldía no afectará la validez de una sentencia dictada en rebeldía.

> *Mitsubishi Motor v. Lunor y otros*, supra.

Procede la anotación de rebeldía cuando el demandado no cumple con el requisito de comparecer a contestar la demanda u ofrecer una defensa a su favor, por lo que este no presenta alegación alguna contra las alegaciones hechas por el demandante o contra el remedio solicitado por este. *Mitsubishi Motor v. Lunor y otros,* supra; *Rivera Figueroa v. Joe's European Shop,* supra, pág. 589. *Álamo v. Supermercado Grande, Inc.,* 158 DPR 93, 100 (2002); Véase, R. Hernández Colón, *Práctica Jurídica de Puerto Rico,* Derecho Procesal Civil, 6ta Ed. San Juan, Ed. Lexis Nexis, 2017, p. 328.

***También procede una anotación de rebeldía contra una parte que se negó a descubrir su prueba luego de que se le requiriera hacerlo***, o que incumplió con algún mandato del tribunal, lo que motiva a este, ***por solicitud del demandante o motu proprio, a imponerle la rebeldía como sanción***. *González Pagán v. SLG Moret-Brunet,* supra, pág. 1068 (2019); *Rivera Figueroa v. Joe's European Shop,* supra, pág. 589, citando a *Álamo v. Supermercado Grande, Inc.,* supra; *Ocasio v. Kelly Servs.,* 163 DPR 653, 669 (2005).

Una anotación en rebeldía provoca que se dan por admitidos todos los hechos bien alegados en la demanda. Además, tiene el efecto de autorizar al Foro Primario para que dicte sentencia, si es

eso lo que procede en derecho. *Mitsubishi Motor v. Lunor y otros,* supra; *Rivera Figueroa v. Joe's European Shop,* supra, pág. 598.

Sobre los derechos de una parte en rebeldía el Tribunal Supremo, en varias ocasiones, ha reiterado que le asiste el derecho a conocer del señalamiento, asistir a la vista, contrainterrogar los testigos de la parte demandante, impugnar la cuantía y apelar la sentencia. *Mitsubishi Motor v. Lunor y otros,* supra; *Ins. Co. v. Isleta Marina,* 106 DPR 809, 817 (1978).

### D. Los Instrumentos Negociables y *el Pagaré*

En Puerto Rico, la primera ley adoptada para regular el derecho cambiario provino del Código de Comercio español de 1889. *FirstBank v. Registradora,* 208 DPR 64, 88-89 (2021). No fue hasta el 1930 que el antiguo Código de Comercio fue enmendado por la Ley Uniforme de Instrumentos Negociables de Puerto Rico. *COSSEC et al. v. González López et al.,* 179 DPR 793, 800 (2010). Esto se hizo para atemperarla a la nueva legislación del modelo estadounidense, la entonces *Negotiable Instruments Law* (NIL), promulgada por el National Conference of Commissioners on Uniform State Laws en 1896. *FirstBank v. Registradora,* supra, pág. 89; *COSSEC et al. v. González López et al.,* supra, pág. 800. Posteriormente, y a partir del año 1952, la American Law Institute (ALI) y la American Bar Association (ABA), promulgaron el famoso Uniform Commercial Code (UCC) con el propósito de corregir lagunas y defectos en la redacción de la legislación anterior y unificar otros aspectos del derecho mercantil. De igual forma, la llegada del UCC inició un movimiento de uniformidad jurídica en Estados Unidos, y hoy es la legislación modelo más extensa que se ha promulgado. Id. en las págs. 88-89.

Eventualmente, en el año 1995, la Legislatura de Puerto Rico aprobó la entonces Ley de Instrumentos Negociables y Transacciones Bancarias, Ley Núm. 208 del 17 de agosto de 1995, 19 LPRA sec. 401, adoptando casi *ad verbatim* las disposiciones del UCC con el fin de colocarnos en paridad cambiaria con los demás estados de la nación norteamericana, que en su mayoría había adoptado el UCC. Dicha ley ha sido objeto de múltiples enmiendas, entre las cuales está la actualización de su nombre a Ley de Transacciones Comerciales, en adelante, LTC. *FirstBank v. Registradora*, supra, pág. 90.

Esta rama del Derecho que regula el tráfico de instrumentos negociables se conoce comúnmente como el derecho cambiario. En general, los instrumentos negociables son documentos de crédito que le confieren a su titular el derecho a recibir un pago o contraprestación a cambio de su transmisión. Su utilidad estriba en que sirven como método de pago alterno a la moneda de curso legal o al dinero en efectivo, por lo que su uso se ha proliferado para facilitar la compraventa de mercancías y otras transacciones comerciales. *FirstBank v. Registradora*, supra, págs. 88-89.

La LTC supra, sec. 2-104 (a), 19 LPRA 504(a), define *instrumento negociable* como una promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden, si este:

> (1) es pagadero al portador o a la orden al momento de su emisión o cuando lo posee primeramente su tenedor;
> (2) es pagadero a la presentación o en una fecha específica, y
> (3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero.

En términos generales, los instrumentos negociables son documentos escritos que prueban la existencia de una deuda, pero

que pueden cambiar de mano en mano como un tipo de moneda alterna. Es decir, que tienen la cualidad de ser negociados y, por lo tanto, transferidos a un tercero que no fuere parte de la transacción original.[29]

Existen dos clases de instrumentos negociables. La promesa, mejor conocida como *el pagaré*, y la orden, también conocida como letra de cambio o giro. De manera que todos los instrumentos negociables son modalidades del *pagaré* o de la letra de cambio.[30]

Sobre el *pagaré*, la sección 2-104 inciso (e) de la LTC, supra, establece que un instrumento negociable es un *pagaré* cuando en este *hay un compromiso escrito de pagar el dinero suscrito por la persona que se obliga.* Es decir, es un documento de crédito que confiere a su titular el derecho a recibir un pago o contraprestación a cambio de su transmisión. *FirstBank v. Registradora*, supra, pág. 90. De forma resumida, es una promesa de parte del deudor para pagar una suma cierta de dinero a la orden de persona determinada o al portador, en una fecha fija o específica o a la presentación. [31]

La LTC, supra, en su sección 2-105 inciso (a), 19 LPRA 505(a), indica que emisión significa la primera entrega de un instrumento hecha por el firmante o el librador, bien sea a un tenedor o a un no-tenedor, con el propósito de concederle derechos en el instrumento a cualquier persona. De manera que, una vez emitido, se obliga el deudor.

Sobre el otorgamiento del instrumento, tienen derecho a exigir el cumplimiento el tenedor o una persona que no es tenedor, siempre que esta última se encuentre en posesión del instrumento, y tenga los derechos de un tenedor. LTC, supra, sec. 2-301, 19 LPRA 601.

---

[29] L. M. Negrón Portillo y M. Fabián Maldonado, *Derecho mercantil y otros principios generales del derecho puertorriqueño*, pág. 194 (1997).
[30] Id. pág. 195.
[31] F. Montañez Miranda, *Aspectos legales para los negocios,* San Juan, Ed. Situm, 2018, T. I, pág. 252.

La sección 2-602 de la LTC, 19 LPRA 752, establece la forma en la que se realiza un pago en los instrumentos negociables. En este sentido la ley nos dice que se paga un instrumento en la medida que se haga el pago:

(i) por o a nombre de la persona obligada a pagar el instrumento, y

(ii) a una persona con derecho a exigir el cumplimiento del instrumento. En la medida del pago hecho, la parte obligada a pagar el instrumento se releva de su obligación, aunque el pago se haya hecho con conocimiento de la existencia de una reclamación contra el instrumento de parte de otra persona bajo las disposiciones de la Sección 2-306.

19 LPRA § 752 (a)

## III.

Por no estar relacionados entre sí, esta Curia ha determinado atender de manera separada la discusión de los planteamientos de error.

## A.

La parte apelante plantea, como *primer señalamiento,* que erró el foro primario al sentenciarle a pagar lo adeudado como resultado de una promesa de pago que hiciere este a favor del apelado sin aplicar la figura de la compensación. Luego de cavilar con toda la documentación y las determinaciones de hecho y de derecho, nos resulta forzoso concluir que *el foro primario no incidió en error alguno al declarar con lugar la demanda.*

Los instrumentos negociables son, sin lugar a duda, de gran importancia en nuestra vida contemporánea. A manera de ejemplo,

diariamente se hacen miles de transacciones en Puerto Rico que envuelven cheques y promesas de pago.[32] No ha de extrañarnos, sabiendo que estos se utilizan como mecanismos alternos al uso de moneda legal. No obstante, su importancia descansa **en la garantía que brindan sobre la existencia de un crédito o deuda a favor de su tenedor**.

De la transcripción de la vista y la documentación se desprende que la parte apelante reconoce haber hecho la promesa de pago al emitir el pagaré a favor del apelado. Aun cuando argumenta en ocasiones que la parte apelante le adeuda ciertas cantidades, las mismas no están relacionadas al pagaré en cuestión -con excepción de la cantidad reconocida por ambas partes por la suma de $28,600.00 ya acreditados a la deuda.

Adicional a esto, los instrumentos negociables se rigen por la legislación establecida en la LTC, supra, por lo que nuestro Código Civil se aplica de manera supletoria en aquello que no cubra la ley especial. La ley especial prevalecerá sobre el derecho general.

Habiéndose pactado fecha específica para el cumplimiento, incluso lugar de pago, y no disponiendo acreditación de pagos a un tercero, no corresponde acreditar a este pagaré esa supuesta deuda como compensación. La Sección 2-601 de la LTC, supra, sec. 752(a), establece que se paga un instrumento en la medida que se haga el pago: (i) por o a nombre de la persona obligada a pagar el instrumento, y **(ii) a una persona con derecho a exigir el cumplimiento del instrumento**.

De modo que, los pagos realizados a un tercero y que en este pleito no se ha probado que fuera una persona con derecho a exigir el cumplimiento de este pagaré, no puede acreditarse al mismo. Por

---

[32] L. M. Negrón Portillo y M. Fabián Maldonado, supra, en la nota 29, págs. 194-195.

lo que actuó correctamente el Foro Primario toda vez que la parte apelante no probó la inexistencia de la deuda garantizada en pagaré.

**B.**

Como *segundo señalamiento de error*, la parte apelante alega que erró el tribunal al ver la vista en su fondo luego de haber sido declarada en rebeldía. Aduce que presentó el descubrimiento de prueba dentro del término correspondiente. *No le asiste la razón a la parte apelante.*

En nuestro ordenamiento jurídico, como se ha mencionado en varias ocasiones, existen diversas etapas dentro de los procesos de adjudicación en los Tribunales. Cada etapa se sirve de la anterior y se organiza para la siguiente. Estas etapas, a su vez, se delimitan dentro de un marco o andamiaje legal de procedimientos y reglamentos. En conjunto, estas etapas y procedimientos funcionan de manera que se salvaguarde el debido proceso de ley y los derechos fundamentales de todas las partes. Del juzgador fallar en los procedimientos durante alguna etapa, la próxima etapa funciona para proveer la oportunidad de corregir esos errores.

Para que estas etapas funcionen correctamente es esencial que se respete a los tribunales y las órdenes que estos emiten. Así también, el derecho y la administración de la justicia no puede parcializarse y analizarse desde un solo lado. Es esencial la aplicación de esas cuestiones discrecionales y flexibles, como la otorgación de prórrogas con justa causa.

En el caso ante nos, se observó el buen ejercicio de la discreción del juzgador y la flexibilidad para con una parte que alegaba estar en búsqueda de representación legal. Lo que no se observó fue el respeto a las órdenes emitidas por el Foro Primario.

Del expediente se desprende que se le concedieron, al menos, dos (2) prórrogas para el descubrimiento de prueba, y la parte apelante las incumplió y causó dilaciones en los procedimientos.

Así las cosas, y basado en la documentación presentada y la transcripción de la vista, es deber de este tribunal reconocerle deferencia al Foro Primario. Declarados en rebeldía por el tribunal, al amparo de las Reglas de Procedimiento Civil, supra, correspondía la eliminación de las alegaciones y proceder con la vista en su fondo, estando en rebeldía.

Una vez en rebeldía, al apelante le asiste el derecho a conocer del señalamiento, asistir a la vista, contrainterrogar los testigos de la parte demandante, impugnar la cuantía y apelar la sentencia. Así las cosas, este Tribunal puede deducir que el foro primario salvaguardó los derechos de la parte apelante. Se le informó de la fecha de la vista, a la cual acudió. Se le permitió contrainterrogar a los testigos y a confrontar la prueba, incluso, ante las objeciones de la parte apelada, se le brindó deferencia para completar y realizar las preguntas que formuló. Así como también se le notificó de la sentencia y su derecho a apelar.

Por todo lo cual, nos resulta inevitable respetar y conceder la deferencia que amerita brindarle al Foro Primario.

**IV.**

Por los fundamentos que anteceden, *confirmamos la sentencia apelada.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones